IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA A. GALLAGHER,<br><br>                *Plaintiff*,<br><br>v.<br><br>CENTRAL VALLEY SCHOOL DISTRICT,<br><br>                *Defendant*. | Civil Action No. 2:22-cv-1791<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Theresa A. Gallagher ("Gallagher") filed suit against Central Valley School District ("School District") for allegedly failing to consider and hire her for a permanent classroom teacher position because of her age. Gallagher requests relief for alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count I), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* (Count II). Pending before the Court is the School District's Motion for Summary Judgment. (ECF No. 25). For the reasons set forth below, the School District's motion will be granted and judgment will be entered in its favor.

**I.     FACTUAL BACKGROUND**

Gallagher is a 52-year-old woman. She was initially hired as a day-to-day substitute teacher in September 2001, by Center Area School District. She continued to work as a substitute teacher, primarily in the middle school, from 2001 through the end of the 2009-2010 school year. In the summer of 2009, Center Area School District merged with Monaca School District to create the School District. After the merger, Gallagher was hired by the School

1

District as a day-to-day substitute teacher for its primary, middle, and high schools. Primarily, she worked in the middle school. (ECF No. 26, pp. 4-5; ECF No. 31, p. 7). In December 2014, the School District contracted with Kelly Services to provide substitute teachers. (ECF No. 26, p. 5; ECF No. 31, pp. 8-9).

In 2019, the School District asked Gallagher to serve as a substitute consumer science teacher in the high school after the permanent teacher took a leave of absence. Gallagher declined the assignment, but after some encouragement from the School District's administration, she accepted. Shortly thereafter, due to teacher shortages and the COVID-19 pandemic, the School District employed a new system where building substitutes were assigned to report to their assigned school every day so that they were available as needed if a permanent teacher was sick or otherwise unavailable. (ECF No. 26, p. 6; ECF No. 31, pp. 9-10). After her substitute consumer science teacher assignment ended, Gallagher was offered the opportunity to serve as a building substitute at the School District's Center Grange Primary School. Gallagher accepted the position and remained in it for the 2019-2020 school year. (ECF No. 26, p. 6; ECF No. 31, p. 11).

Due to the COVID-19 pandemic, the School District and local teacher's union came to an agreement that the School District would not immediately fill positions of permanent teachers on leaves of absences with permanent teachers. Instead, these positions would be staffed by long-term substitute teachers. In August 2020, Gallagher was offered the opportunity to serve as a long-term second grade substitute teacher at Center Grange Primary School. Gallagher accepted the position for the 2020-2021 school year, and it made her an employee of the School District. (ECF No. 26, p. 7; ECF No. 31, p. 12).

At the end of the 2020-2021 school year, the School District learned that three elementary school teachers who were on leave from Center Grange Primary School would not be returning to their positions. The School District's collective bargaining agreement ("CBA") with the labor union representing the teaching staff required it to publish or send out notice to its teachers and staff that identified openings before the start of each school year. According to the CBA, the School District was required to give tenured teachers (i.e., teachers who had been employed for at least five years) the first opportunity to fill open positions or to bid or transfer to open positions based on seniority. This process would occur at a bid meeting ("Bid Meeting"), which was held in late May or early June of each year. After the Bid Meeting, School District administrators would meet to determine what remaining openings needed to be filled in what schools and grade levels. (ECF No. 26, pp. 2-3; ECF No. 31, pp. 2-3).

The School District sent notice to teachers for the May 24, 2021, Bid Meeting. Gallagher submitted separate letters to the School District's superintendent and school board ("School Board") expressing her interest in applying for these positions. However, each of the three elementary teacher positions at Center Grange Primary School were bid on at the Bid Meeting by tenured teachers. Pursuant to the CBA, the School District filled the positions with those tenured teachers. (ECF No. 26, p. 8; ECF No. 31, pp. 13-14). After the Bid Meeting, the School District only had openings for the following permanent teacher positions for the 2020-2021 school year: a third grade teacher position at Todd Lane Elementary School and a sixth grade reading specialist position at the middle school. (ECF No. 26, pp. 8-9, ECF No. 31, p. 14). In various emails to School District Superintendent Dr. Nicholas Perry ("Dr. Perry"), Gallagher expressed interest in becoming a permanent full-time teacher and requested that she be considered for any available positions. (ECF No. 30, pp. 8-10; ECF No. 31, pp. 1-2).

After the Bid Meeting, Dr. Perry chose to exercise his discretion and utilize the second method for hiring set forth in Section 304.1 of the School District's policies and procedures.[1] This method gives the School District's superintendent the discretion to modify the typical process "[t]o meet the needs of the District." Prior to 2021, there were only a few occasions where Dr. Perry utilized this method of hiring. On those occasions, he decided to forgo the formal interview process and extend offers to individuals serving as long-term substitute teachers based on their outstanding performance. (ECF No. 26, pp. 3-4; ECF No. 31, pp. 4-5).

Dr. Perry asked the principal of Todd Lane Elementary School, Christina Feragotti ("Principal Feragotti"), if any long-term substitutes were "doing a good job," and if there was someone she would recommend. Principal Feragotti recommended Casey Reinstadtler ("Reinstadtler") for the position as she felt Reinstadtler had served in an exemplary fashion as a long-term third grade substitute teacher for one and a half years. Reinstadtler knew the curriculum, had prepared effective lesson plans, and had received favorable performance reviews. Additionally, Reinstadtler knew the staff and types of uniform teaching methods, philosophies, and/or strategies that Principal Feragotti had worked hard to implement in the school. It was Principal Feragotti's belief that Reinstadtler could do the job and do it extremely well. (ECF No. 26, p. 9; ECF No. 31, pp. 14-18); (ECF No. 30, p. 9; ECF No. 34, p. 2).

Principal Feragotti never considered Gallagher as someone to recommend to Dr. Perry. Gallagher had never taught as a long-term substitute teacher for the third grade. She never

---

[1] The first method for hiring, which is most often used, consists of the advertisement or posting of an open position and a formal interview process. The steps involved are: (1) the initial screening of candidates by a hiring committee to determine who will be interviewed; (2) an initial in-person screening interview before an interview panel; (3) a teaching demonstration; and (4) a full in-depth interview. The number of candidates is narrowed down at each step until a final person is selected after the final interview. That person is then recommended to the School Board for final approval. (ECF No. 26, p. 3; ECF No. 31, p. 4).

served as a long-term substitute at Todd Lane Elementary School. Further, Gallagher was rarely a substitute teacher at Todd Lane Elementary School in the 2019-2020 school year. Thus, Principal Feragotti never had the opportunity to evaluate Gallagher.[2] (ECF No. 26, pp. 11, 26; ECF No. 31, pp. 18-21). As to Dr. Perry, he did not know who Principal Feragotti considered for the third grade teacher position. (ECF No. 32-10, p. 21). He explained that "Gallagher was not considered for that position. Theresa Gallagher did not work in that building. Had Theresa Gallagher been a long-term sub in that building, then she would have been given consideration, as well." (ECF No. 32-10, p. 20).

In June 2021, Dr. Perry made the recommendation to the School Board to hire Reinstadtler to fill the open third grade teacher position at Todd Lane Elementary School. He informed the School Board that Reinstadtler was recommended by Principal Feragotti, and the School Board made the decision to hire Reinstadtler.[3] She was the only individual the School Board considered for the position and no School Board member challenged Dr. Perry's recommendation. Reinstadtler was offered the position and she accepted. A vote for the School Board to formally approve Reinstadtler's hiring was placed on the June 17, 2021, meeting agenda. (ECF No. 26, pp. 13-14; ECF No. 31, pp. 24-25); (ECF No. 30, pp. 12, 16; ECF No. 34, pp. 2, 7).

Upon seeing the scheduled vote for Reinstadtler's hiring on the School Board's meeting agenda, Gallagher spoke to School Board President Donna Belcastro ("Belcastro") on the

---

[2] Gallagher has four teaching certifications and she was familiar with all members of staff at Todd Lane Elementary School. She knew that the third grade teachers lesson planned together and assigned the same homework. (ECF No. 30, pp. 5-6, 10; ECF No. 34, pp. 1-2).

[3] Dr. Perry is a member of the school board, but he has no voting rights. (ECF No. 30, pp. 15-16; ECF No. 34, p. 7). He "make[s] recommendations and then the board either agrees or not agrees [ ], depending on the circumstances." (ECF No. 32-10, p. 22).

morning of June 16, 2021. Belcastro advised Gallagher to reach out to Chair Dennis Bloom ("Bloom") of the School Board's personnel committee. By email dated June 16, 2021, at 6:31 p.m., Gallagher notified Bloom of her interest in any available position for the 2021-2022 school year. This was the first time any member of the School Board was informed of Gallagher's interest in the third grade teacher position at Todd Lane Elementary School. (ECF No. 26, p. 14; ECF No. 31, p. 25); (ECF No. 30, pp. 11; ECF No. 34, p. 2). Her expressed interest was too late as the decision to hire Reinstadtler was already made, and Reinstadtler had accepted the job. The School Board voted to formally hire Reinstadtler on the evening of June 17, 2021. (ECF No. 26, p. 14; ECF No. 31, pp. 25-26); (ECF No. 30, p. 12; ECF No. 34, p. 2).

Administrators in the School District felt that Gallagher was a good substitute teacher and a valuable contributor. She was offered a position as a building substitute teacher for the 2021-2022 school year. Gallagher declined the position after learning that the School District would not revoke Reinstadtler's hiring for the third grade teacher position at Todd Lane Elementary School. Gallagher then went to work as a substitute teacher for another school district. (ECF No. 26, pp. 14-15; ECF No. 31, pp. 26-27).

## II.     STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable

6

to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### III. ANALYSIS

At Count I, Gallagher brings an ADEA claim, alleging that the School District denied her a permanent third grade teacher position because of her age of 52.[4] At Count II, she brings a PHRA claim, alleging the same. Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As the provisions of the PHRA and ADEA are "analogous," the Court applies the same analysis. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998).

A plaintiff can establish a claim of discrimination under the ADEA or PHRA by presenting either direct or circumstantial evidence. *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). "Direct evidence of discrimination would be evidence which, if

---

[4] In its initial brief, the School District expressed concern that Gallagher was also attempting to litigate the issue of not receiving a sixth grade reading specialist teacher position. (ECF No. 27, p. 1 n.1). In response, Gallagher explained, "Throughout this case, Gallagher has identified only one claim: the denial of a Third Grade teacher position at Todd Lane Elementary that was filled in June 2021." (ECF No. 29, p. 6). Given Gallagher's statement, the fact that that nothing regarding a sixth grade reading specialist teacher position was raised in her complaint, and the fact that Gallagher did not file a motion for leave to amend her complaint before the close of discovery, the Court concludes that the only adverse employment action properly before it is the alleged failure of the School District to hire Gallagher for a third grade teacher position at Todd Lane Elementary School. *See Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987) (rejecting a claim raised for the first time in a motion for summary judgment as outside the scope of the pleadings as well as not a matter of record).

believed, would prove the existence of the fact [in issue] *without inference or presumption.*" *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (citation omitted) (emphasis in original). "[E]vidence is not direct where the trier of fact must infer the discrimination on the basis of age from an employer's remarks." *Id.* (citation omitted). That is the case here as Gallagher has failed to adduce direct evidence of discrimination, and she concedes this point. (ECF No. 29, pp. 5-6).

The Court must apply the "three-part burden-shifting framework set forth in *McDonnell Douglas*"[5] to discrimination claims based on circumstantial evidence. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Under the three-part framework, a plaintiff must establish a prima facie case of discrimination. *Id.* For an age discrimination case, the prima facie elements are that: "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Id.* (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)). The burden then shifts to the employer to give "a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999)). If the employer can offer such a reason, then "the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Id.* (citing *Burton*, 707 F.3d at 426–27).

The parties do not dispute that Gallagher established her prima facie case of age discrimination. (ECF No. 27, pp. 11-12; ECF No. 29, p. 6). The School District has offered a

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

8

legitimate, nondiscriminatory reason for not hiring Gallagher for the third grade teacher position at Todd Lane Elementary School: that Reinstadtler was the ideal candidate who had been serving in an exemplary fashion as a long-term substitute teacher in the third grade at the school for the past one and a half years. Reinstadtler knew the curriculum, had prepared effective lesson plans, and had received favorable performance reviews. Additionally, Reinstadtler knew the staff and types of uniform teaching methods, philosophies, and/or strategies that Principal Feragotti had worked hard to implement in the school. In contrast, Gallagher never taught as a long-term substitute in a third grade class, and she was not working as a long-term substitute in the Todd Lane Elementary School. Due to these facts, as well as never having had the opportunity to evaluate Gallagher, Principal Feragotti never considered recommending Gallagher to Dr. Perry for the third-grade teacher position. The School Board agreed with Principal Feragotti's and Dr. Perry's reasons for recommending Reinstadtler, and it voted to hire her.

Thus, the issue before the Court is whether Gallagher has sustained her difficult burden to produce evidence from which a factfinder could reasonably infer that the School District's proffered justification for not hiring her was a pretext for age discrimination. *Burton*, 707 F.3d at 426 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764–65 (3d Cir. 1994)). Gallagher had to come forth with evidence that would permit a reasonable factfinder to either "(1) disbelieve" the employer's nondiscriminatory reason, or "(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [her] employer's action." *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644 ("To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse employment action." (citation omitted)). At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of

specificity." *Willis*, 808 F.3d at 650 (citation omitted). Gallagher has stated that she is proceeding under the second method of demonstrating pretext – that she has adduced circumstantial evidence of an invidious discriminatory reason.[6] (ECF No. 29, pp. 8-16).

To prove that invidious intent was a "determinative cause" of an employer's action, "a plaintiff can show, for example, that the defendant had previously subjected the same plaintiff to 'unlawful discriminatory treatment,' that it had 'treated other, similarly situated persons not of [her] protected class more favorably,' or that it had 'discriminated against other members of [her] protected class or other protected categories of persons.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 277 (3d Cir. 2010) (quoting *Fuentes*, 32 F.3d at 765). Here, Gallagher has not come forth with any instances where she was previously discriminated against based on her age, and she has not adduced evidence that the School District discriminated against other individuals over the age of forty applying for permanent teaching positions. There is no statistical evidence of a pattern or practice of discrimination of the School District against individuals over the age of forty. In fact, the record evidence shows that the School District has

---

[6] Regarding the first method of demonstrating pretext, the evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal citations omitted). Looking at the totality of the evidence, the Court finds that Gallagher has failed to present evidence that contradicts the core facts put forth by the School District as to its legitimate reasons for its hiring decision for the third grade teacher position. To provide a basis for disbelief, Gallagher had to present "evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citation omitted)). She has not done so. She has submitted no concrete evidence to refute the core facts set forth by the School District. In other words, had Gallagher proceeded under the first method of demonstrating pretext, the Court would have found that she failed to adduce evidence establishing a legitimate basis for disbelieving the School District's nondiscriminatory explanation for its action. It would have held that a reasonable factfinder would have no legitimate basis for disbelieving the School District's nondiscriminatory reason.

hired many individuals over the age of forty for teaching positions. (ECF No 33-1, pp. 3-4; ECF No. 30, pp. 14-15; ECF No. 34, pp. 5-7).

What Gallagher points to first as adequate circumstantial evidence is her own recollection of an August 5, 2021, telephone call she had with Belcastro. Allegedly, Belcastro said to her, "You are too old, Theresa, he [the Superintendent] is not going to hire anyone with experience. He wants young kids he can push around." (ECF No. 29, p. 9). During the same conversation, Gallagher claims that Belcastro told her about how Dr. Perry refused to hire an applicant for an open guidance counselor position because the applicant had too much experience (seventeen years), although the applicant was willing to take a pay cut. According to Gallagher,

> The reason School Board President Belcastro told Gallagher that story was to prove to her that Superintendent Perry was not going to hire Gallagher for any position because of Gallagher's age [ ]as it cannot be disputed that an employee with 17 years of experience would necessarily be significantly older than an individual in her early 20's, like Reinstadtler, who could have only worked in a public school setting for a couple of years after getting her college degree and teaching certification.

(*Id.* at 10). Second, Gallagher points to Dr. Perry's comment at an August 19, 2021 School Board meeting where he said: "New teacher orientation took place Tuesday, Wednesday and Thursday of this week. I believe we have 13 here. We have 13 new teachers, young, fresh faces excited to get into education." (*Id.* at 12). Lastly, Gallagher claims that Dr. Perry's decision to forgo the first method of hiring under Section 304.1 "is evidence of discrimination," and that he took steps to prevent Gallagher from being considered for the third grade teacher position and "used the School Board as his 'cat's paw' to carry out his ageism" against Gallagher.[7] (*Id.* at 13-14).

---

[7] The term "cat's paw" derives from a fable of a monkey that uses flattery to convince a cat to pull chestnuts out of a fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. *See Staub v. Proctor*

11

Having carefully examined the record, the Court concludes that what Gallagher has come forth with is insufficient to support a claim of pretext. Her evidence consists of nothing more than her personal beliefs and mere speculation. She has presented no evidence from which a jury could conclude that the School District's articulated reasons for not hiring her were a pretext for age discrimination.

As to Gallagher's alleged conversation with Belcastro, the School District contends that "the record does not support the fact that the conversation ever happened as portrayed by [Gallagher]," and notes that Gallagher's deposition testimony and declaration "are curiously inconsistent with each other" as to "[Gallagher's] recollection of the August 5, 2021" conversation. (ECF No. 33, pp. 11-12). It is certainly true that a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 324. Here, the Court need not delve into an examination of what evidence Gallagher garnered in discovery to substantiate her recollection of the conversation with Belcastro because the content of the conversation is inadequate circumstantial evidence of pretext.

While Belcastro may have expressed her personal beliefs about Dr. Perry's hiring practices to Gallagher, her speculation as to why Gallagher was not considered by Dr. Perry as a viable candidate for the third grade teacher position does not constitute competent evidence that creates a general dispute of material fact for summary judgment purposes. This is to say that

---

*Hosp.*, 562 U.S. 411, 415 n.1 (2011). "Today the term 'cat's-paw' refers to 'one used by another to accomplish his purposes.' ... In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). Under the theory, an "employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub*, 562 U.S. at 421.

Belcastro never conveyed to Gallagher that she had a conversation with Dr. Perry where he specifically told Belcastro that he did not consider Gallagher for the third grade teacher position because of her age. Speculation by Belcastro is not suitable evidence of pretext.

As to any comments Dr. Perry may have made to Belcastro about not hiring an applicant for an open guidance counselor position because the applicant had too much experience, which can hardly be construed as ageist, such a comment is too stray and remote from Dr. Perry's decision to recommend Reinstadtler for the third grade teacher position so as to support a reasonable inference of age discrimination. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). It was a statement made outside of the context of the decision-making process for the third grade teacher position at Todd Lane Elementary School.

Further, the Court is compelled to note the hearsay problems that would occur at trial should Gallagher seek to testify about this portion of her alleged conversation with Belcastro, which she is seemingly offering for the truth of the matters asserted. The Court must do so because hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment. *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."); *see also Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Gallagher's testimony would be double hearsay because it would describe a statement Belcastro made to Gallagher about a

conversation Belcastro allegedly had with Dr. Perry regarding a guidance counselor position. Belcastro has no recollection of ever discussing this with Gallagher. (ECF No. 34, pp. 4-5; ECF No. 28, pp. 74-75). Dr. Perry has denied ever making such comments. (ECF No. 32-10, p. 28). Gallagher has failed to demonstrate how such a statement would be admissible trial, and the Court finds that it is outside of the reach of any exception to hearsay and it would be inadmissible.

As to Dr. Perry's remark (*i.e.*, "We have 13 new teachers, young, fresh faces excited to get into education.") when he was speaking to the School Board in August 2021, it is not evidence that age was a substantial factor in the hiring process for the third grade teacher position. This remark by Dr. Perry was clearly outside of the decisional process. Further, Dr. Perry's stray remark may also be considered a truism as the future of any business, including a School District, lies with its relatively young employees. *See, e.g., Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir. 1980) (statement that "future lay in the employer's young Ph.D's" was a truism, and not evidence of age discrimination.). Praising youth does not indicate bias against more mature workers. Gallagher's attempts to attribute some sort of ageist attitude to Dr. Perry based on a stray remark unrelated to the decision-making process for the third grade teacher position lacks the probative force necessary for a reasonable jury to conclude that Gallagher was not considered for the third grade teacher position because of her age.

Lastly, as to Gallagher's cat's paw theory of liability, an employer may "be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse employment action at issue in the case." *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015) (citing *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011)); *see*

*also Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 543 (D. Del. 2012), *aff'd*, 511 F. App'x 125 (3d Cir. 2013). Gallagher had to establish (1) a genuine issue of material fact concerning the bias of the subordinate (Dr. Perry) and (2) a genuine issue of material fact "as to whether the proffered reason for the employment action is pretextual, which in a [cat's paw] claim requires [Gallagher] to demonstrate a causal relationship between the subordinate's actions and the employment decision." *Mason*, 134 F. Supp. 3d at 874 (quoting *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 488 (10th Cir. 2006)). To establish a causal relationship between the actions of a subordinate and the employment decision, a plaintiff must show proximate cause—"'some direct relation between the injury asserted and the injurious conduct alleged' and excludes links that are 'remote, purely contingent, or indirect.'" *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015) (quoting *Staub*, 562 U.S. at 419).

Gallagher has failed to marshal evidence to support her cat's paw theory of liability. The record evidence does not provide a basis from which a reasonable jury could infer that Dr. Perry had discriminatory animus toward mature teachers – specifically those over the age of forty. Gallagher cannot rely on her own unsupported assertions, speculation, and conclusory allegations. There is no evidence establishing that a discriminatory animus on behalf of Dr. Perry proximately caused the hiring of Reinstadtler over Gallagher. The evidence of record is such that the second method for hiring set forth in Section 304.1 of the School District's policies and procedures afforded Dr. Perry the discretion to modify the typical process to meet the needs of the School District. On the few occasions prior to 2021 where Dr. Perry decided to forgo the formal interview process, job offers were extended to individuals serving as long-term substitute teachers based on their outstanding performances. While Gallagher clearly does not like that Dr. Perry utilized this method of hiring and sought the recommendation of Principal Feragotti for the

15

appropriate candidate for the third grade teacher position, the Court's role is not to second guess the School District's methods for hiring and it prioritization of hiring long-term substitute teachers, like Reinstadtler, already working in a particular school in the teacher position at issue. No evidence has been adduced that Dr. Perry fabricated a reason for recommending Reinstadtler to the School Board for hiring. In fact, he merely recommended the hiring of the individual whom Principal Feragotti believed to be the best person for the job. There is absolutely no evidence of record that Dr. Perry did not want Gallagher hired for the third grade teacher position, let alone because of her age. The fact of the matter is that she was not considered by Principal Feragotti (and then Dr. Perry) because she was not a long-term substitute at Todd Lane Elementary School, and she never substitute taught at the third grade level. Gallagher has failed to ascertain concrete evidence of discriminatory animus by Dr. Perry. Her cat's paw argument fails. In short, it turns on nothing more than impermissible conjecture.

Gallagher has not come forth with evidence from which a factfinder could conclude "an invidious reason was more likely than not a ... determinative cause of the [School District's] action." *Fuentes*, 32 F.3d at 764. Facts, not Gallagher's perceptions and her conjecture, are required to support her age discrimination claims. No evidence in the record would cause a reasonable jury to conclude that the School District was motivated by an invidious intent. No reasonable jury would find that the School Board failed to hire Gallagher on the basis of age discrimination.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the School District's summary judgment motion and enter judgment in its favor. Orders of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 8/28/24